IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| FFC MORTGAGE CORPORATION LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>RED DOOR TITLE INSURANCE AGENCY, INC.; MICHAEL MIRACOLA, an individual; ZAIDA POLLACK, an individual; SASHA MIRACOLA aka SASHA MARTINEZ aka GRACIELA MARTINEZ, an individual; and ANA J. AMADOR, an individual,<br><br>   Defendants. | Case Number:<br>Judge: |

### FFC MORTGAGE CORPORATION LLC'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff FFC Mortgage Corporation LLC ("FFC"), and for its Claims against Red Door Title Insurance Agency, Inc. ("Red Door Title"); Michael Miracola, an individual; Zaida Pollack, an individual; Sasha Miracola aka Sasha Martinez, an individual; and Ana J. Amador, an individual, and, states and alleges as follows:

### PARTIES

1. FFC is, and at all times mentioned herein was, a limited liability corporation duly organized under the laws of the State of New York with its principal place of business at 2595 Brighton Henrietta, Rochester, New York.

2. FFC is a mortgage company and at all times mentioned herein was authorized to do business in the State of Florida.

3. Upon information and belief Michael Miracola is a citizen of the State of Florida, who resides in Pembroke Pines, Florida.

4. Upon information and belief Red Door Title has its principle place of business at 2500 NW 79th Avenue 102, Doral, Florida.

5. Upon information and belief Zaida Pollack is a citizen of the State of Florida, who resides in North Miami Beach, Florida.

6. Upon information and belief Sasha Miracola aka Sasha Martinez aka Graciela Martinez ("Sasha Miracola") is a citizen of the State of Florida, who resides in Fort Lauderdale, Florida.

7. Upon information and belief Ana J. Amador is a citizen of the State of Florida who resides in Miami, Florida.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens for different states and the amount in controversy is in excess of $75,000.00.

9. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to the claims occurred in the Southern District of Florida.

## GENERAL ALLEGATIONS

10. FFC is in the business of brokering and originating mortgage loans.

11. On or about February 27, 2009, Zaida Pollack signed a sales contract with FFC that stated the seller of the property located at 5580 NW 61st Street #605, Coconut Creek, Florida

33073 ("Subject Property") would be the Federal National Mortgage Association ("Fannie Mae") and that the buyer of the Subject Property would be Zaida Pollack.

12. On or about April 4, 2009, Sam Ignoffo of Ignoffo Appraisal Company generated an original appraisal ("Original Appraisal") valuing the Subject Property as worth $279,000.00.

13. In or about May 2009, Zaida Pollack took out a Residential Mortgage Loan through FFC in the amount of $185,250.00 ("Pollack Loan"), to purchase the Subject Property.

14. The Pollack Loan was based on, among other things, the Original Appraisal for the Subject Property that was generated by Sam Ignoffo, and the condition that the seller of the Subject Property would be Fannie Mae.

15. In exchange for a fee Red Door Title had agreed to serve as closing agent in connection with the Pollack Loan, and agreed to abide by the Closing Instructions, which were furnished to Red Door Title in connection with the closing of the Pollack Loan (the "Closing Instructions").  *See* Exhibit 1.

16. By conducting the Pollack closing, Red Door Title assumed contractual duties to FFC.

17. By conducting the Pollack closing, Red Door Title assumed fiduciary duties to FFC.

18. The Closing Instructions stated in pertinent part:

> "Do not close or fund this loan unless ALL conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for our loan proceeds and approved secondary financing must pass to you in the form of cash. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property."

Exhibit 1.

19. The Closing Instructions also stated:

> "Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff:"

Exhibit 1.

20. Red Door Title was aware that the Subject Property was to be sold by Fannie Mae to Zaida Pollack because KEL Title Insurance Group, Inc. had issued a Title Insurance Commitment for Zaida Pollack's purchase of the Subject Property. The Title Insurance Commitment was effective April 27, 2009, was signed by Ana J. Amador, and stated that documents "which must be executed, delivered and filed for record" included a "Warranty Deed from Fannie Mae, Federal National mortgage Association, to Zaida Pollack."

### **The Scheme**

21. On or about May 21, 2009, Fannie Mae sold to Michael Miracola the Subject Property for $63,000.

22. On or about the May 21, 2009, the Pollack Loan closed.

23. On or about May 21, 2009, Michael Miracola sold the Subject Property to Zaida Pollack for $247,000, with Ana J. Amador of Red Door Title acting as the Closing Agent (the "Transaction").

24. Michael Miracola realized a profit of around $184,000 for one day's work by purchasing the Subject Property from Fannie Mae and then selling it the same day to Zaida Pollack.

25. On or about May 21, 2009, Ana J. Amador, of Red Door Title signed the HUD-1 Settlement Statement as the Closing Agent for the Transaction, stating that the seller of the

Subject Property was Fannie Mae and that the buyer of the Subject Property was Zaida Pollack. *See* Exhibit 2.

26. The signed HUD-1 presented to FFC, and signed by Ana J. Amador, stated that Zaida Pollack paid $75,145.51 at the closing of the Subject Property and that all proceeds were paid to the seller, Fannie Mae. *Id*.

27. Red Door Title failed to indicate payoffs for the Transaction on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff, as required by the Closing Instructions.

28. The funds supposed to be paid to Fannie Mae were supposed to come from an account held at Power Financial Credit Union.

29. Upon information and belief, the Power Financial Credit Union account that supplied the down payment funds paid at closing for the Transaction was apparently a joint account ("Joint Account") belonging to Zaida Pollack and Sasha Miracola aka Sasha Martinez aka Graciela Martinez.

30. Upon information and belief, Sasha Miracola aka Sasha Martinez aka Graciela Martinez is the sister-in-law of Michael Miracola.

31. Zaida Pollack's name had been added to the Joint Account with Sasha Miracola aka Sasha Martinez aka Graciela Martinez in April 2009, about a month before the subject Transaction.

32. Upon information and belief, the funds Zaida Pollack used to close the Transaction came from Michael Miracola and/or his relatives.

33. The Pollack Loan was subsequently sold by FFC to Wells Fargo.

34. On or about June 30, 2011, Wells Fargo foreclosed on the Pollack Loan after Zaida Pollack defaulted on the Pollack Loan.

35. On June 26, 2012, Wells Fargo demanded that FFC indemnify Wells Fargo for the Pollack Loan due to fraud regarding the Transaction.

36. FFC was forced to indemnify Wells Fargo for the Pollack Loan at a cost of $161,329.86 due to fraud involving the Transaction.

### Similar Transaction

37. Upon information and belief Michael Miracola and Sasha Miracola aka Sasha Martinez aka Graciela Martinez have participated in similar real estate transactions.

38. On or about December 11, 2008, Fannie Mae sold to Graciela Martinez aka Sasha Miracola property located at 5580 NW 61st Street Apt 621, Coconut Creek, FL for $75,000.

39. Upon information and belief, on or about December 11, 2008, Graciela Martinez aka Sasha Miracola sold the same property to Michael Miracola for $279,900.

40. Upon information and belief, the December 11, 2008, transaction was closed by by Promise Land Title Services, 15025 NW 77th Ave, #127, Miami Lakes, FL and the lender was Palm Beach Atlantic.

41. Upon information and belief, the same deposit account at Power Financial Credit Union used for the Transaction was used for the December 11, 2008, transaction, as a deposit of $98,000 was made to it on November 12, 2008.

## COUNT I
## Breach of Contract
## (Red Door Title)

42.     FFC hereby re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 41, inclusive and above as though fully set forth herein.

43.     Red Door Title entered into a valid contract with FFC in the form of the Closing Instructions and agreed to perform the closing of the Pollack Loan in accordance with the Closing Instructions.  *See* Exhibit 1.

44.     Red Door Title breached the Closing Instructions by, among other things, failing to confirm the seller of the Subject Property to Zaida Pollack.

45.     Had FFC known the true facts, FFC would not have funded the Pollack Loan.

46.     FFC fully performed its obligations to Red Door Title under the contract, except any obligations which FFC was not required to perform as a result of Red Door's breaches.

47.     As a direct and proximate result of Red Door's breaches of contract, FFC has suffered damages of $161,329.86, not counting attorney's fees.

## COUNT II
## Breach of Fiduciary Duty
## (Red Door Title)

48.     FFC hereby re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 41, inclusive and above as though fully set forth herein.

49.     Red Door Title assumed a duty to advise and/or protect FFC in the Transaction by providing its professional services for which it received a fee.

50. FFC relied on a relationship of trust and confidence with Red Door Title in the performance of these professional services, and understood that Red Door Title would act in a fiduciary capacity with regard to its services to lenders such as FFC.

51. Red Door Title knew that FFC would rely upon and trust Red Door Title to provide truthful information regarding the Transaction.

52. Red Door Title breached its fiduciary duty to FFC by providing FFC with an incorrect HUD-1 Settlement Statement (HUD-1) to obtain funding approval, and closing the Pollack Loan inconsistent with the information on the HUD-1, in that Zaida Pollack did not purchase the Subject Property from Fannie Mae.  See Exhibit 2.

53. Red Door Title's breaches of its fiduciary duty induced FFC to participate in the Transaction.

54. As a direct and proximate result of Red Door Title's breaches of fiduciary duty, FFC has suffered damages of $161,329.86, not counting attorney's fees.

## COUNT III
### Fraudulent Misrepresentation
### (Red Door Title)

55. FFC hereby re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 41, inclusive and above as though fully set forth herein.

56. Red Door Title omitted material facts or failed to disclose material facts to FFC in connection the closing of the Transaction.

57. The omissions by Red Door Title include providing FFC with an incorrect HUD-1 Settlement Statement (HUD-1) and closing the Transaction inconsistent with the information on the HUD-1, in that Zaida Pollack did not purchase the Subject Property from Fannie Mae.  See Exhibit 2.

58. Red Door Title knew that its representations on the HUD-1 Settlement Statement were false.

59. Red Door Title intended that FFC would rely upon the HUD-1 Settlement Statement and be induced to participate in the Transaction.

60. Because of the representations made by Red Door Title in the HUD-1 Settlement Statement, FFC funded the Transaction then sold the Pollack Loan to Wells Fargo.

61. As a direct and proximate result of Red Door Title's fraudulent misrepresentations, FFC has suffered damages of $161,329.86, not counting attorney's fees.

## COUNT IV
### Negligent Misrepresentation
### (Red Door Title)

62. FFC hereby re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 41, inclusive and above as though fully set forth herein.

63. Red Door Title omitted material facts or failed to disclose material facts to FFC in connection the closing of the Transaction.

64. The omissions by Red Door Title include providing FFC with an incorrect HUD-1 Settlement Statement and closing the Transaction inconsistent with the information on the HUD-1, in that Zaida Pollack did not purchase the Subject Property from Fannie Mae and money was not disbursed to Fannie Mae. *See* Exhibit 2.

65. Red Door Title either knew its representations were false, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false.

66. Red Door Title intended that FFC would rely upon and be induced to participate in the Transaction based on its omissions and/or misstatements.

67. FFC indeed relied upon Red Door Title's omissions and/or misstatements and funded the Transaction before selling the Pollack Loan to Wells Fargo.

68. As a direct and proximate result of Red Door Title's negligent misrepresentations, FFC has suffered damages of $161,329.86, not counting attorney's fees.

## COUNT V
## Fraud
### (Ana J. Amador, Michael Miracola, Sasha Miracola, Zaida Pollack)

69. FFC hereby re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 41, inclusive and above as though fully set forth herein.

70. Michael Miracola, Sasha Martinez and Zaida Pollack agreed to participate in a real estate Transaction whereby Michael Miracola would purchase the Subject Property from Fannie Mae and then sell the property to Zaida Pollack that very same day for a profit of approximately $184,000.

71. Michael Miracola and Sasha Martinez knew that Zaida Pollack informed FFC that she was purchasing the Subject Property from Fannie Mae.

72. On or about May 21, 2009, Michael Miracola purchased the Subject Property from Fannie Mae for $63,000.

73. On or about May 21, 2009, Zaida Pollack received a residential mortgage loan in the amount of $185,250 from FFC for the purchase of the Subject Property from Fannie Mae.

74. Upon information and belief, Michael Miracola and Sasha Martinez provided Zaida Pollack with the $75,145.51 down payment that Zaida Pollack provided to the Closing Agent, which was then provided to Michael Miracola upon completion of the Transaction.

75. On or about May 21 2009, Michael Miracola sold the Subject Property to Zaida Pollack for $247,000.

76. Upon information and belief, Michael Miracola, Sasha Martinez and Zaida Pollack knew that the money FFC lent to Zaida Pollack for the purchase of the Subject Property would never be repaid.

77. Michael Miracola, Sasha Martinez and Zaida Pollack intended that FFC would rely upon their actions, statement and omissions and be induced to participate in the Transaction.

78. Upon information and belief, Ana J. Amador, Closing Agent, purposely misstated on the HUD-1 that Fannie Mae was the Seller of the Subject Property for the Transaction. See Exhibit 2.

79. Upon information and belief, Michael Miracola made a one-day profit of approximately $184,000 that he shared with others.

80. Zaida Pollack subsequently defaulted on the Pollack Loan.

81. Ana J. Amador, Michael Miracola, Sasha Martinez and Zaida Pollack intended that FFC would rely upon their actions, statements and omissions and be induced to participate in the Transaction.

82. Due to the concerted actions of Ana J. Amador, Michael Miracola, Sasha Martinez, and Zaida Pollack, FFC funded the Transaction, sold the Pollack Loan to Wells Fargo, and ultimately had to indemnify Wells Fargo.

83. As a direct and proximate result of the fraud committed by Ana J. Amador, Michael Miracola, Sasha Martinez, Zaida Pollack, FFC has suffered damages of $161,329.86, not counting attorney's fees.

**COUNT VI**
**Conspiracy to Commit Fraud**
**(Michael Miracola, Sasha Miracola, Zaida Pollack)**

84. FFC hereby re-alleges and incorporates by reference each and every allegation in Paragraphs 1 through 41, inclusive and above as though fully set forth herein.

85. Michael Miracola, Sasha Martinez and Zaida Pollack agreed to participate in a real estate Transaction whereby Michael Miracola would purchase the Subject Property from Fannie Mae and then sell the property to Zaida Pollack that very same day for a profit of approximately $184,000.

86. Michael Miracola and Sasha Martinez knew that Zaida Pollack informed FFC that she was purchasing the Subject Property from Fannie Mae.

87. <u>Overt Act No. 1</u>: On or about May 21, 2009, Michael Miracola purchased the Subject Property from Fannie Mae for $63,000.

88. <u>Overt Act No. 2</u>: On or about May 21, 2009, Zaida Pollack received a residential mortgage loan in the amount of $185,250 from FFC for the purchase of the Subject Property from Fannie Mae.

89. <u>Overt Act No. 3</u>: Upon information and belief, Michael Miracola, and Sasha Martinez provided Zaida Pollack with the $75,145.51 down payment that Zaida Pollack provided to the Closing Agent, which was then provided to Michael Miracola upon completion of the Transaction.

90. <u>Overt Act No. 4</u>: On or about May 21 2009, Michael Miracola sold the Subject Property to Zaida Pollack for $247,000.

91. Upon information and belief, Michael Miracola, Sasha Martinez and Zaida Pollack knew that the money FFC lent to Zaida Pollack for the purchase of the Subject Property would never be repaid.

92. Michael Miracola, Sasha Martinez and Zaida Pollack intended that FFC would rely upon their actions, statement and omissions and be induced to participate in the Transaction.

93. Upon information and belief, Ana J. Amador, Closing Agent, purposely misstated on the HUD-1 that Fannie Mae was the Seller of the Subject Property for the Transaction. See Exhibit 2.

94. Upon information and belief, Michael Miracola made a one-day profit of approximately $184,000 that he shared with others.

95. Zaida Pollack subsequently defaulted on the Pollack Loan.

96. Michael Miracola, Sasha Martinez and Zaida Pollack intended that FFC would rely upon their actions, statements and omissions and be induced to participate in the Transaction.

97. Due to the concerted actions of Michael Miracola, Sasha Martinez, and Zaida Pollack, FFC funded the Transaction, sold the Pollack Loan to Wells Fargo, and ultimately had to indemnify Wells Fargo.

98. As a direct and proximate result of the fraud committed by Ana J. Amador, Michael Miracola, Sasha Martinez, Zaida Pollack, FFC has suffered damages of $161,329.86, not counting attorney's fees.

## REQUEST FOR JURY TRIAL

Plaintiff FFC, by and through its counsel, demands trial by jury with regard to all issues in the above-referenced cause.

## PRAYER

WHEREFORE, Plaintiff FFC prays for relief as follows:

1. For general damages according to proof;

2. For special damages according to proof;

3. For costs of suit incurred herein; and

4. For such other and further relief as deemed by the court to be appropriate.

Respectfully Submitted,

/s/ W. Scott Turnbull
W. Scott Turnbull, Esq./FL #0038626
Crary ❖ Buchanan Law Offices
759 SW Federal Hwy, Ste 106
Stuart, FL 34994-2936
P: (772) 287-2600/ F: (772) 223-4373
*e-Service: Turnbull@CraryBuchanan.com
*e-Service: Shannon@CraryBuchanan.com
Attorneys for Plaintiffs

Co-Counsel

Greg Chambers, Esq.
American Mortgage Law Group, P.C.
75 Rowland Way, Suite 350 | Novato, CA 94945
t: 415/878-0030 x. 152 | f: 415/878-0035
e: gchambers@americanmlg.com

* Pursuant to Fla. R. Jud. Admin 2.516, counsel hereby designates this email address for service of pleadings and documents in this case.