United States District Court
for the
Southern District of Florida

| | |
|---|---|
| FFC Mortgage Corporation, Plaintiff )<br>)<br>v. )<br>)<br>Red Door Title Insurance Agency, )<br>Inc., *et al.*, Defendants ) | Civil Action No. 13-61132-Civ-Scola |

## Default Judgment

Plaintiff, FFC Mortgage Corporation ("FFC") has filed a Motion for Default Final Judgment (ECF No. 44) against Defendants Red Door Title Insurance Agency, Inc. ("Red Door"); Ana J. Amador ("Ana J. Amador"); and Michael Miracola ("Michael Miracola"). After considering the Motion, the affidavit of FFC, the record, and the relevant legal authorities, the Court grants the Motion (ECF No. 44).

The Plaintiff has moved for a default judgment consistent with Federal Rule of Civil Procedure 55(b)(2). Previously, the Clerk of the Court entered a default under Rule 55(a). A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). In issuing a default judgment, a court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)). In this case, FFC has filed an affidavit establishing that it suffered damages in the amount of $143,329.86. (*See* Mot. Default J., with corresponding exhibits, ECF No. 44.)

## Analysis
### A.    Breach of Contract (Red Door):

FFC is entitled to judgment in its favor on Count I for breach of contract against Red Door. The elements of a claim for breach of contract are: (1) the existence of a contract, (2) the defendant's breach, and (3) damages. *Palma Vista Condo. Ass'n of Hillsborough County, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 8:09-CV-0155-T-27EAJ, 2010 WL 2293265, at * 2 (M.D. Fla. 2010); *Boim v. Nat'l Data Prods., Inc.,* 932 F. Supp. 1402, 1405 (M.D. Fla. 1996).

The Complaint alleges that FFC provided Red Door with Closing Instructions on the closing of the Subject Property. The Closing Instructions stated, "Do not close or fund this loan unless ALL conditions in these closing instructions and any supplemental closing instructions have been satisfied. The total consideration in this transaction except for our loan proceeds and approved secondary financing must pass to you in the form of cash. Do not close or fund this loan if you have knowledge of a concurrent or subsequent transaction which would transfer the subject property." (ECF No. 6, ¶ 18).

The Title Insurance Commitment signed by Ana J. Amador, President of Red Door, stated that documents "which must be executed, delivered and filed for record" included a "Warranty Deed from Fannie Mae, Federal National Mortgage Association, to Zaida Pollack." (*Id.* ¶ 20).  Zaida Pollack did not purchase the Subject Property from Fannie Mae.  Ana J. Amador of Red Door signed the HUD-1 Settlement Statement as the Closing Agent for the Transaction, stating that the seller of the Subject Property was Fannie Mae and that the buyer of the Subject Property was Zaida Pollack. (*Id.* ¶ 25). The signed HUD-1 presented to FFC and signed by Ana J. Amador, stated that Zaida Pollack paid $75,145.51 at the closing of the Subject Property and that all proceeds were paid to the seller, Fannie Mae. (*Id.* ¶ 26).  The Complaint further alleges that Red Door entered into the contract with FFC in the form of the Closing Instructions, breached the Closing Instructions by failing to confirm the seller of the property to Zaida Pollack, and caused FFC to suffer damages. (*Id.* ¶¶ 42-47).

### B. Breach of Fiduciary Duty (Red Door):

FFC is entitled to judgment in its favor on Count II for breach of fiduciary duty against Red Door. A fiduciary duty exists when there is a "relation of trust and confidence between the parties." *Gracey v. Eaker*, 837 So. 2d 348, 352 353 (Fla. 2002).  A fiduciary relationship exists between a closing agent and the parties to an escrow, including the lender. *The Fl. Bar v. Joy,* 679 So. 2d 1165, 1167 (Fla. 1996); *Wall St. Mortg. Bankers, Ltd. v. Attorneys Title Ins. Fund, Inc.*, 08-21648-CIV, 2008 WL 5378126 (S.D. Fla. Dec. 23, 2008) (Moreno, J.) (plaintiff stated a cause of action for breach of fiduciary duty where defendant closing agent disbursed plaintiff's money that it had held in escrow without first obtaining a deed or HUD-1 Settlement Statement); *Askew v. AllState Title & Abstract Co., Inc.*, 603 So. 2d 29, 31 (Fla. 2d DCA 1992) (a closing agent has a fiduciary duty to the parties to a transaction); *Crowell v. Morgan Stanley, Dean Witter Serv. Co., Inc.*, 87 F. Supp. 2d 1287, 1293 (S.D. Fla. 2000) (Ryskamp, J.) (noting that an escrow agent has a fiduciary duty pursuant to the escrow agreement).  Consistent with this duty, a closing agent has a duty

to supervise the closing in a "reasonably prudent manner." *Askew v. Allstate Title & Abstract Co.,* 603 So. 2d 29, 31 (Fla. 2d DCA 1992) (quoting *Fla. S. Abstract & Title Co. v. Bjellos,* 346 So. 2d 635, 636 (Fla. 2d DCA 1977)) (stating that a title insurance company acting as a closing agent has a duty to supervise a closing in a reasonably prudent manner). Moreover, a closing agent has an "obligation to disclose to its principal all material facts relevant to the agency." *Sudburry v. Lowke*, 403 So. 2d 1117, 1119 (Fla. 5th 1981).

As the Closing Agent, Red Door owed a fiduciary duty to FFC. FFC relied on a relationship of trust and confidence with Red Door in the performance of these professional services, and understood that Red Door would act in a fiduciary capacity with regard to its services to lenders such as FFC. Red Door knew that FFC would rely upon and trust Red Door to provide truthful information regarding the Transaction. (ECF No. 6, ¶ 51). Red Door breached its fiduciary duty to FFC by providing FFC with an incorrect HUD-1 Settlement Statement (HUD-1) to obtain funding approval, and closing the Pollack Loan inconsistent with the information on the HUD-1, in that Zaida Pollack did not purchase the Subject Property from Fannie Mae. (*Id.* ¶ 52). Red Door's breaches of its fiduciary duty induced FFC to participate in the Transaction. (*Id.* ¶ 53). As a direct and proximate result of Red Door's breaches of fiduciary duty, FFC has suffered damages of $161,329.86. (*Id.* ¶ 54).

**C.     Fraudulent Misrepresentation (Red Door):**

FFC is entitled to judgment in its favor on Count III for fraudulent misrepresentation. A prima facie claim for fraudulent misrepresentation requires: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem,* 44 So. 3d 102, 105 (Fla. 2010); *see Johnson v. Davis,* 480 So. 2d 625 (Fla. 1985).

Red Door omitted material facts or failed to disclose material facts to FFC in connection with the closing of the Transaction. (ECF No. 6, ¶ 56). The omissions by Red Door include providing FFC with an incorrect HUD-1 Settlement Statement (HUD-1) and closing the Transaction inconsistent with the information on the HUD-1, in that Zaida Pollack did not purchase the Subject Property from Fannie Mae. (*Id.* ¶ 57). Red Door knew that its representations on the HUD-1 Settlement Statement were false. (*Id.* ¶ 55). Red Door intended that FFC would rely upon the HUD-1 Settlement Statement and be induced to participate in the Transaction. (*Id.* ¶ 59). Because of the representations made by Red Door in the HUD-1 Settlement Statement, FFC funded the Transaction and then sold the Pollack Loan to Wells Fargo. (*Id.* ¶

60). As a direct and proximate result of Red Door's fraudulent misrepresentations, FFC has suffered damages of $161,329.86. (*Id.* ¶ 61).

**D.     Negligent Misrepresentation (Red Door):**

FFC is entitled to judgment in its favor on Count IV, negligent misrepresentation against Red Door.  A prima facie claim for negligent misrepresentation requires: (1) a misrepresentation of material fact; (2) the representor knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known that the representation was false; (3) the representor intended to induce another to act on the misrepresentation; and (4) injury resulted to the party acting in justifiable reliance upon the misrepresentation. *Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d 784, 786 (Fla. 3d DCA 1993). For a negligent misrepresentation claim, a plaintiff need not show "that the representor intended to make a false statement, but rather that the representation was made under circumstances in which its falsity should have been known." *Wallerstein v. Hospital Corp. of America*, 573 So. 2d 9, 10 (Fla. 4th DCA 1990). Within the elements of a negligent misrepresentation claim, "there is no requirement that Plaintiff demonstrate that the Defendants breached a pre-existing duty to disclose information." *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1498 (M.D. Fla. 1993). Moreover, while in a common law fraud action the plaintiff must show that defendant made a statement that he or she knew to be false, in a negligent misrepresentation action, the plaintiff need only show that the defendant failed to ascertain the truth or falsity of the representation. *In re Lichtman*, 388 B.R. 396 (Bankr. M.D. Fla. 2008). "A representation made with an honest belief in its truth may still be negligent, because of a lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession." *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993). Thus, Plaintiff "need only. . . assert that [defendant] negligently failed to ascertain the truth or falsity of [its] representation." *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993).

According to the Complaint, Red Door omitted material facts or failed to disclose material facts to FFC in connection with the closing of the Transaction. The omissions by Red Door include providing FFC with an incorrect HUD-1 Settlement Statement and closing the Transaction in a way that was inconsistent with the information on the HUD-1, in that Zaida Pollack did not purchase the Subject Property from Fannie Mae and money was not disbursed to Fannie Mae. (ECF No. 6 at ¶ 64).  Red Door either knew its representations were false, made the misrepresentations without knowledge of their truth or

falsity, or should have known the representations were false. (*Id.* ¶ 65). Red Door intended that FFC would rely upon and be induced to participate in the Transaction based on its omissions and/or misstatements. (*Id.* ¶ 66). FFC indeed relied upon Red Door's omissions and/or misstatements and funded the Transaction before selling the Pollack Loan to Wells Fargo. (*Id.* ¶ 67). As a direct and proximate result of Red Door's negligent misrepresentations, FFC has suffered damages of $161,329.86. (*Id.* ¶ 68).

**E.     Fraud (Ana J. Amador & Michael Miracola):**

FFC is entitled to judgment in its favor on Count V, fraud against Ana J. Amador and Michael Miracola. A prima facie claim for fraud requires: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment. *Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. 5th DCA 2004); *See* Fla. Std. Jury Instr. (Civ.) MI 8; *see also Taylor Woodrow Homes Florida, Inc. v. 4/46–A Corp.,* 850 So. 2d 536 (Fla. 5th DCA 2003).

Michael Miracola, Sasha Miracola and Zaida Pollack agreed to participate in a real estate transaction whereby Michael Miracola would purchase the Subject Property from Fannie Mae and then sell the property to Zaida Pollack that very same day for a profit of approximately $184,000. (ECF No. 6, ¶ 70). Michael Miracola, and Sasha Miracola knew that Zaida Pollack informed FFC that she was purchasing the Subject Property from Fannie Mae. (*Id.* ¶ 71). On May 21, 2009, Michael Miracola purchased the Subject Property from Fannie Mae for $63,000. (*Id.* ¶ 72). On May 21, 2009, Zaida Pollack received a residential mortgage loan in the amount of $185,250 from FFC for the purchase of the Subject Property from Fannie Mae. (*Id.* ¶ 73). Michael Miracola and Sasha Miracola provided Zaida Pollack with the $75,145.51 down payment that Zaida Pollack provided to the Closing Agent, which was then provided to Michael Miracola upon completion of the Transaction. (*Id.* ¶ 4). On May 21, 2009, Michael Miracola sold the Subject Property to Zaida Pollack for $247,000. (*Id.* ¶ 75). Michael Miracola, Sasha Miracola and Zaida Pollack knew that the money FFC lent to Zaida Pollack for the purchase of the Subject Property would never be repaid. (*Id.* ¶ 76). Michael Miracola, Sasha Miracola and Zaida Pollack intended that FFC would rely upon their actions, statements, and omissions and be induced to participate in the Transaction. (*Id.* ¶ 81). Ana J. Amador, Closing Agent, purposely misstated on the HUD-1 that Fannie Mae was the Seller of the Subject Property for the Transaction. (*Id.*

¶ 78).  Michael Miracola made a one-day profit of approximately $184,000 that he shared with others. (*Id.* ¶ 79).  Zaida Pollack subsequently defaulted on the Pollack Loan.  (*Id.* ¶80). Due to the concerted actions of Ana J. Amador, Michael Miracola, Sasha Miracola, and Zaida Pollack, FFC funded the Transaction, sold the Pollack Loan to Wells Fargo, and ultimately had to indemnify Wells Fargo.  (*Id.* ¶ 82). As a direct and proximate result of the fraud committed by Ana J. Amador, Michael Miracola, Sasha Miracola, Zaida Pollack, FFC has suffered damages of $161,329.86.  (*Id.* ¶ 83).

**F.     Conspiracy to Commit Fraud (Ana J. Amador, Michael Miracola):**

FFC is entitled to judgment in its favor on Count VI, conspiracy to commit fraud against Ana J. Amador and Michael Miracola.  A prima facie claim for conspiracy to commit fraud requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy.  *Charles v. Florida Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. Dist. Ct. App. 2008); see *Raimi v. Furlong,* 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997); see *Witmer v. Dep't of Bus. & Prof'l Regulation, Div. of Pari–Mutuel Wagering,* 631 So. 2d 338, 342 (Fla. 4th DCA 1994) (observing that an "[a]greement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act"); *Nicholson v. Kellin,* 481 So. 2d 931, 935 (Fla. 5th DCA 1985) (stating that "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose by unlawful means"). Each co-conspirator need not act to further a conspiracy; each "need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Charles*, 988 So. 2d at 1159-60; see *Donofrio v. Matassini,* 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (also stating that "[t]he existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence"); see also *Nicholson,* 481 So. 2d at 935 (confirming that an act done in pursuit of a conspiracy by one conspirator is an act for which each other conspirator is jointly and severally liable).

Ana J. Amador, Michael Miracola, Sasha Miracola and Zaida Pollack agreed to participate in a real estate transaction whereby Michael Miracola would purchase the Subject Property from Fannie Mae and then sell the property to Zaida Pollack that very same day for a profit of approximately $184,000. (ECF No. 6, ¶ 85).   Michael Miracola, and Sasha Miracola knew that Zaida Pollack informed FFC that she was purchasing the Subject Property from Fannie Mae.  (*Id.* ¶ 86).   On or about May 21, 2009, Michael Miracola

purchased the Subject Property from Fannie Mae for $63,000. (*Id.* ¶ 87).  On or about May 21, 2009, Zaida Pollack received a residential mortgage loan in the amount of $185,250 from FFC for the purchase of the Subject Property from Fannie Mae. (*Id.* ¶ 88).  Michael Miracola, and Sasha Miracola provided Zaida Pollack with the $75,145.51 down payment that Zaida Pollack provided to the Closing Agent, which was then provided to Michael Miracola upon completion of the Transaction. (*Id.* ¶ 89). Then on May 21 2009, Michael Miracola sold the Subject Property to Zaida Pollack for $247,000.  (*Id.* ¶ 90).

Michael Miracola, Sasha Miracola and Zaida Pollack knew that the money FFC lent to Zaida Pollack for the purchase of the Subject Property would never be repaid.  (*Id.* ¶ 91). They intended that FFC would rely upon their actions, statements, and omissions and be induced to participate in the Transaction. (*Id.* ¶ 92).  Ana J. Amador, Closing Agent, purposely misstated on the HUD-1 that Fannie Mae was the Seller of the Subject Property for the Transaction. (*Id.* ¶ 93).   Michael Miracola made a one-day profit of approximately $184,000.  Zaida Pollack subsequently defaulted on the Pollack Loan. (*Id.* ¶ 94).  Ana J. Amador, Michael Miracola, Sasha Miracola and Zaida Pollack intended that FFC would rely upon their actions, statements and omissions and be induced to participate in the Transaction. (*Id.* ¶ 96).  Due to the concerted actions of Ana J. Amador, Michael Miracola, Sasha Miracola, and Zaida Pollack, FFC funded the Transaction, sold the Pollack Loan to Wells Fargo, and ultimately had to indemnify Wells Fargo and suffered damages of $161,329.86.  (*Id.* ¶ 97-98).

## **Conclusion**

After having considered the Motion, the record, and the relevant legal authorities, the Court **grants** the Motion for Default Judgment (ECF No. 44). Defendant Red Door is liable to the FFC for Count I (Breach of Contract), Count II (Breach of Fiduciary Duty), Count III (Fraudulent Misrepresentation), and Count IV (Negligent Misrepresentation). Ana J. Amador is liable to the FFC for Count V (Fraud), and Count VI (Conspiracy to Commit Fraud). Michael Miracola is liable to the FFC for Count V (Fraud), and Count VI (Conspiracy to Commit Fraud).

The resultant damages suffered from the above counts are similar in nature; and are calculated as follows:

| | |
|---|---|
| Payment to Wells Fargo: | $161,329.86 |
| Payment Received From Sasha Miracola: | $   8,000.00 |
| Payment Received From Zaida Pollack: | $ 10,000.00 |
| **Amount owing**: | $143,329.86. |

The Court **enters judgment** in favor of the Plaintiff, FFC, who shall have and recover the sum of $143,329.86 from Defendants, Red Door (whose last known address is c/o Ana J. Amador, Registered Agent, 1470 NW 107th Ave., Suite A, Miami, Florida 33172); Ana J. Amador (whose last known address is 5324 164th Court, Miami, FL 33185-5172), and Michael Miracola (whose last known address is 7737 18th Street, Pembroke Pines, FL 33024-3632) for which sum let execution issue. The Court reserves jurisdiction to award post judgment interest and to address all collections and enforcement efforts on this judgment together with whatever relief the Court deems right and just. The Court **directs** the Clerk to **close** this matter.

**Done and Ordered** in chambers, at Miami, Florida, on September 15, 2014.

_____
Robert N. Scola, Jr.
United States District Judge